**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cassius Clayton Whitehead,<br><br>  Plaintiff,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>  Defendants. | No. CV-17-00257-TUC-RCC<br><br>**ORDER** |

Pending before the Court is Plaintiff Cassius Clayton Whitehead's Second Motion to File Supplemental Claims. (Doc. 90.) Plaintiff's original Motion to Supplement asked the Court to allow him to add allegations that Arizona Department of Corrections Officer P. Dudley confiscated his and another inmates' legal documents, in violation of his constitutional rights to access the courts and in retaliation for exercising his First Amendment right to file grievances and federal lawsuits. (Doc. 60-1 at 2, 4-5.) In addition, Plaintiff claimed that ADC Director Charles L. Ryan implemented and enforced Department Order 902.10.1.3, which is a retaliatory policy against inmates who assist other inmates to file grievances and litigate claims against ADC staff. *Id*. at 5. On January 22, 2019, the Court issued an Order denying Plaintiff's original Motion to Supplement without prejudice. (Doc. 86.) The Court indicated that Plaintiff may be able to remedy the disparities in the supplement through amendment. *Id.* Plaintiff has since filed the instant Motion to Supplement addressing these disparities. (Doc. 90.) The Court has reviewed Plaintiff Motion to Supplement (Doc. 90), Defendants' response (Doc. 92), and Plaintiff's

reply (Doc. 96) and will grant Plaintiff's motion (Doc. 90). The Court will order Defendants Dudley and Ryan to respond to the Count Four, First Amendment retaliation and access–to–court claims, and will permit limited discovery on the events surrounding the confiscation of legal paperwork in Plaintiff's possession.

**I. Procedural History**

    **a. First Amended Complaint**

After the Court screened Plaintiff's First Amended Complaint, three claims remained. In Count Two, Plaintiff raises a threat-to-safety claim against Defendants Torres, Barnes, and Morrison relating to his work on a hazmat crew. (Doc. 26 at 10-13.) In Count Three, Plaintiff raises a § 1983 claim alleging that Defendants Ryan, Pratt, and Corizon engaged in a practice or custom of denying medical care to prisoners to save money. *Id*. at 14-16. Count Four includes a four–part claim: three claims of First Amendment retaliation against Defendants Randall, Leonard, and Torres, and a threat–to–safety claim against Defendant Leonard. *Id*. at 17-20. Count Four alleges that the Defendants engaged in a pattern of preventing and interfering with Plaintiff's ability to pursue federal claims, access the courts, and to assist others in doing so. *Id*.

The Court set August 14, 2018 as the deadline to amend pleadings. (Doc. 44.) Prior to this deadline, Plaintiff filed a Motion to Join Additional Parties (Doc. 59) and a Motion to Supplement his First Amended Complaint (Doc. 60), seeking to add claims against both CO Dudley and Defendant Ryan for retaliation and for preventing access to the courts. (Doc. 60-1.)

The Court denied both motions without prejudice. (Doc. 86.) The Court indicated that Plaintiff's amendment shared a common legal issue with Count Four of the First Amended Complaint, and supplementation may be appropriate if Plaintiff could remedy the deficiencies in the supplemental pleading. *Id*. at 5. Specifically, for his access–to–courts claim, Plaintiff needed to show that he suffered actual injury from Defendants' actions. *Id*. at 8. Furthermore, to remedy his First Amendment retaliation claim, Plaintiff needed to demonstrate that the retaliatory action failed to advance a legitimate penological interest.

*Id*. On February 25, 2019, Plaintiff filed the instant Second Motion to File Supplemental Claims (Doc. 90) with his lodged proposed supplement (Doc. 91).

### b. Plaintiff's Supplemental Motion

Plaintiff's Supplemental Motion alleges that CO Dudley and Defendant Ryan retaliated against him in violation of his First Amendment right to file his own, and assist others in filing, administrative grievances and federal suits against ADC officials. (Doc. 90 at 3.) Plaintiff also alleges that in theory the ADC's policy is designed to allow inmates to assist one another legally, but in reality ADC Department Order 902.10.1.3 limits an inmate's ability to access to legal documents to help filing administrative and federal grievances for other inmates. *Id*. at 3-4. Specifically, the Order "does not permit inmates to be in possession of other inmates['] legal material." (Doc. 92-1 at 2; Doc. 90 at 2.) Defendant Ryan's enforcement of this policy is a First Amendment violation and is retaliatory because it prevents assistance by jailhouse lawyers and is not related to a legitimate penological goal. *Id*. at 3-5.

Plaintiff claims that on August 4, 2018, CO Dudley searched, seized, and confiscated legal paperwork in Plaintiff's possession, including a draft of his First Amended Complaint in this matter. (Doc. 90 at 2.) The seizure also included legal paperwork belonging to another prisoner, Charles Lee, for whom Plaintiff was assisting in filing a federal claim. (Doc. 90 at 2.) CO Dudley told Plaintiff that none of the legal paperwork would be returned. (Doc. 90 at 2.) Plaintiff filed a grievance based on the seizure, and Defendant Ryan responded that Plaintiff's documents were seized pursuant to ADC Department Order 902. (Doc. 92-1 at 2; Doc. 90 at 2.)

At this time, Plaintiff claims the ADC policy mandated CO Dudley to "return the legal materials to the owner regardless of whether or not disciplinary action was taken." (Doc. 90 at 4.) The materials were never returned to Plaintiff and he alleges that CO Dudley indicated he never intended to return the paperwork.

Plaintiff's asserts that CO Dudley and Defendant Ryan's retaliatory actions chilled his First Amendment right to file grievances and speak out against constitutional violations,

and did not further any legitimate correctional objective. *Id*. at 3. Furthermore, the ADC's policy that inmates are not permitted to be in the possession of other inmates' legal documents hampered Plaintiff's constitutional right to access to the courts on behalf of inmate Charles Lee. *Id*. at 4-5.

### c. Defendant's Response

Defendants Leonard, Morrison, Randall, and Torres (collectively "Defendants") argue that the Court should deny Plaintiff's Motion to Supplement because it will cause undue delay and prejudice Defendants. (Doc. 92. at 3.) Defendants note that the supplement not only adds new defendants; it includes actions which occurred much later than the initial claims. *Id*. Furthermore, Discovery has concluded, and adding the additional claim will force reopening of discovery, causing prejudice to defendants and undue delay. *Id*. at 4. Defendants contend that permitting the additional claims at trial will also prejudice a jury against them for incidents that were unrelated to them. *Id*.

In addition, Defendants make a confusing argument that Plaintiff has not demonstrated he has exhausted the supplemental claims because Plaintiff did not include the allegations in his First Amended Complaint. *Id*. at 4-5. But Defendants concede that he could not add these allegations at that time because the issues were still in the administrative grievance process. *Id*. at 5. Moreover, even if the Court considered Plaintiff's claims exhausted as to the confiscated legal property, Defendants argue that Plaintiff's grievance appeal failed to assert a claim for retaliation. *Id*. at 6. Therefore, the retaliation grievance is not exhausted. *Id*.

Along with exhaustion, Defendants claim Plaintiff had no constitutionally protected right to an administrative grievance process. *Id*. They state that the supplemental claim differs from Plaintiff's access to the courts challenge because it does not assert he had no access, and therefore the claim is not viable. *Id*. Regardless, Defendant asserts, Plaintiff has not shown he suffered any harm because he was able to recreate the confiscated documents and he therefore cannot demonstrate that his First Amendment rights had been chilled. *Id*. at 5. Defendants make no argument about whether the ADC's policy about

- 4 -

inmates' ability to possess their own and others' legal documents furthers any penological interest.

### d. Plaintiff's Reply

Plaintiff responds by stating that his supplement properly raises issues that could not have been included in his First Amended Complaint because they had not yet been properly exhausted. (Doc. 93 at 2.) Plaintiff states that his general allegation from his grievance impliedly includes an allegation of retaliation. *Id*. Furthermore, his supplemental claim alleges that Defendant Ryan's enforcement of DOC policy constituted enforcement of a retaliatory policy directed at those who assist other inmates to file grievances. *Id*. at 2-3. In addition, Defendants have already provided discovery pertaining to CO Dudley, and so further discovery would not be too burdensome, cause undue delay, or be prejudicial. *Id*. at 5.

## II. Standard of Review

### a. Motion to Supplement

A court may review a motion to supplement under the same standard as a motion to amend a pleading. Fed.R.Civ.P. 15(a); *see e.g., Torres v. Ryan*, 2013 WL 4026870, at *6 (D. Ariz. Aug. 7, 2013). The Court evaluates whether to permit amendment by weighing "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint." *Western Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991).

### b. First Amendment Retaliation

To viably raise a First Amendment retaliation claim, a claimant must plead (1) a state actor performed an adverse action against a claimant (2) due to protected conduct, and (3) the state actor's conduct caused a chilling of a prisoner's exercising of his First Amendment rights, and (4) the state action did not advance a legitimate penological interest. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). Indeed, "[i]t is clearly established that retaliating against a prisoner for his use of the prison grievance system and for litigating

violates a prisoner's constitutional rights." *Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1147 (N.D. Cal. 2015) (citing *Rhodes*, 408 F.3d at 568-69). This requires demonstrating only that a plaintiff's "First Amendment rights were chilled, though not necessarily silenced. . . . Whether plaintiff was ultimately harmed is not the appropriate test." *Id*. (internal citations omitted).

       **c. Access to Courts Claim**

As the Court's previous order stated: "Prisoners have a right under the First and Fourteenth Amendments to litigate their claims without active interference by prison officials. . . . The right against active interference forbids states from erect[ing] barriers that impede the right of access of incarcerated persons. . . . As a matter of standing for an access–to–courts claim, a plaintiff must plead and show that he suffered an actual injury– i.e., actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." (Doc. 86 at 7 (internal citation and quotation marks omitted) (alterations in original).)

**III.   Discussion**

Plaintiff's supplementary claims do not appear to be in bad faith. In fact, Plaintiff properly waited to add the additional facts until his administrative grievance was properly exhausted. Plaintiff is correct that had he alleged the additional facts any earlier, the Court would have dismissed his claim as unexhausted. The Court will not penalize Plaintiff for appropriately supplementing these claims after exhaustion. Furthermore, Plaintiff filed his first supplemental motion before the deadline for amended pleadings, and the delay was due to the Court's dismissal with leave to amend, not due to Plaintiff's dilatoriness.

Also, the Court finds that the supplemental allegations do not unduly prejudice the Defendants; they relate to the allegation that ADC was engaged in retaliatory conduct based on Plaintiff's exercise of the First Amendment right to file grievances and federal lawsuits, and to access the courts. Furthermore, discovery limited to this specific incident will address Defendants' concerns about delay and reopening of discovery. Moreover, Plaintiff notes that some discovery has already been provided about CO Dudley.

The Court also disagrees with Defendants' claim that retaliation was not raised in

the underlying grievance procedure and is therefore not exhausted. Plaintiff's administrative grievances include all the instant factual allegations, and despite not being specifically articulated as a retaliation claim, the basis for the claim lies within the grievance.

Finally, Plaintiff has remedied the pleading discrepancies that plagued the first supplement. He has pleaded facts supporting his contention that he suffered actual injury, and that the ADC's policy does not advance a legitimate ADC interest. For the retaliation claim, Plaintiff alleges that CO Dudley intentionally confiscated his and another inmates' legal papers with no intent to return them because he was assisting others in filing grievances and federal lawsuits. Furthermore, because of the ADC rule–enforced by Defendant Ryan–that inmates cannot possess other inmates' legal papers, he was unable to assist inmate Charles Lee in filing his federal claim. (Doc. 90 at 5.) While the process for filing of prison grievances is not constitutionally protected right, retaliation for filing grievances is protected. *See Rhodes*, 408 F.3d at 568-69. In addition, Plaintiff has alleged he suffered adverse action; first, he was unable to assist and help Charles Lee with his federal petition. (Doc. 90 at 4-5); and second, even though he was able to recreate some of his own legal documents, he could not recreate them all (Doc. 93 at 3). The confiscation of legal documents and the policy enforced by Defendant Ryan had a chilling effect on Plaintiff's First Amendment rights because it discouraged and prevented Plaintiff from assisting others with and filing his own grievances. Finally, Plaintiff has appropriately alleged that the confiscation and the policy serve no penological interest (Doc. 90 at 3), a statement that Defendants did not attempt to contradict. While the Court must grant deference to prison officials when officials allege legitimate penological reasons for restrictions on inmate assistance, *see e.g., Blaisdell v. Frappiea*, No. CV 08-1462-PHX-JAT (ECV), 2010 WL 2983009, *4 (D. Ariz. Jul. 27, 2010), Defendants have given the Court no reason to believe prohibiting possession of legal documents by another inmate has a legitimate purpose. Liberally construed, Plaintiff has stated a claim of First Amendment retaliation against Defendant Ryan and CO Dudley.

For his access–to–courts claim, Plaintiff states that he had his legal papers seized from him because he assisted other inmates write and file grievances and federal claims. In addition, he was prevented from assisting inmate Charles Lee file a federal lawsuit. The Court makes no determination of the merits of these allegations, but broadly construed, Plaintiff has stated an access–to–courts claim. A jailhouse lawyer may raise an access–to–courts claim when his inability to assist another inmate prevents the other inmate from having access to the courts. *See Kemp v. Arpaio*, No. CV-15-01784-PHX-PGR (ESW), 2016 U.S. Dist. LEXIS 159508, at *22 (D. Ariz. Nov. 16, 2016), *report and recommendation adopted by* 2017 U.S. Dist. Lexis 24557 (D. Ariz. Feb. 21, 2017); *see also Bridges v. Gilbert*, 557 F.3d 541, 554 (7th Cir. 2009) ("Otherwise, prison officials could merely transfer uppity jailhouse lawyers and leave other inmates 'without an alternate means of access to the courts.'"); *see also Johnson v. Avery*, 393 U.S. 483, 487 (1969) (policy that inmates may not help other inmates with legal matters was unlawful). Plaintiff has pleaded actual injury and remedied the discrepancies noted by the Court in the original Screening Order. (Doc. 86 at 7.)

### IV. Effect of Screening on Dispositive Motion

While the Court will permit supplemental claims for relief, this does not prevent Defendants from raising a 12(b)(6) or Rule 56 motion. *See Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007) "[A] defendant's right to bring a motion to dismiss is not foreclosed by the issuance of a *sua sponte* screening providing that the [claimant] has stated a claim."); *see also Harris v. Ford*, 32 F. Supp. 2d 1109, 1111 (D. Ala. 1999) (allowing dispositive motion after screening by the court); *see Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) (guidelines for dismissal by court differ than those under Federal Rules of Civil Procedure). Given the reopening of limited discovery and the addition of new claims and defendants, the Court will extend the discovery and dispositive motions deadlines.

///

///

**IT IS ORDERED:**

(1) Plaintiff's Second Motion to File Supplemental Claims is GRANTED. (Doc. 90.) The Clerk of Court shall docket Plaintiff's Lodged Proposed Supplement in the public docket. (Doc. 91.)

(2) Defendants Ryan and Dudley must answer the claims raised in Count Four of the supplemental complaint.

(3) Deadlines shall be set by the Court after all parties have answered the First Amended and Supplemental Complaint. **THE MAY 5, 2019 DEADLINE FOR DISPOSITIVE MOTIONS FOR ALL PARTIES IS CONTINUED UNTIL FURTHER ORDER OF THE COURT.**

(5) The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 26), the Supplemental Claims (Doc. 91), this Order, and both summons and request for waiver forms for Defendant Dudley.

(6) Plaintiff must complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons, the First Amended Complaint, and the Supplemental Claims on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed.R.Civ.P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(8) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(9) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this

---

[1] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

    (a)    personally serve copies of the Summons, First Amended Complaint (Doc. 26), the Supplemental Claims (Doc. 91), and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b)    within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, the Supplemental Claims, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10)  **A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(11)  Defendant must answer the First Amended Complaint and Supplemental Claims or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12)  Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

Dated this 2nd day of May, 2019.

_____
Honorable Raner C. Collins
Senior United States District Judge